## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| CITY OF ATLANTA, GEORGIA,<br><br>      Plaintiff.<br><br>v.<br><br>FEDERAL EMERGENCY<br>MANAGEMENT AGENCY and<br>Deanne Criswell, in her official<br>capacity,<br><br>      Defendants. | Case No.: _____ |

## COMPLAINT

Plaintiff, City of Atlanta, Georgia ("Atlanta" or "Applicant" or "Applicant-Atlanta"), by and through its attorneys, files this Complaint against Defendants, Federal Emergency Management Agency and Deanne Criswell, Administrator of the Federal Emergency Management Agency (collectively, "FEMA"), and alleges as follows:

1.      This is an action for judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.* of a FEMA decision dated May 10, 2018 refusing to consider Atlanta's administrative appeals of a FEMA denial of $1,236,624.58 in disaster assistance funding.

2.      On March 1, 2011, FEMA denied the eligibility of Applicant Atlanta's claim for disaster assistance funding.

3.      Atlanta timely filed administrative appeals from and relating to this determination in accordance with all appeal procedures and deadlines required by FEMA regulations and policies.

4.      On May 10, 2018, FEMA issued a final decision denying the funding requested by Atlanta without ever considering the merits of the appeals.  The sole rationale given by FEMA for its refusal to consider the appeal was that FEMA's grant administrator in Georgia, the Georgia Emergency Management Agency ("GEMA"), was 40 days late in forwarding an appeal to FEMA in 2011.

5.      By refusing to consider Atlanta's appeals, FEMA denied Atlanta's "Right of Appeal" expressly provided by § 423(a) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act").  42 U.S.C. § 5189a(a).

6.      As the United States Civilian Board of Contract Appeals ("CBCA") has recently articulated in two decisions regarding similar disputes between an applicant for Public Assistance funding and FEMA, FEMA's denial of the "Right of Appeal" is contrary to law[1]:

---

[1] In 2018, Congress amended the Stafford Act to allow applicants for Disaster Assistance to request arbitration by the CBCA to resolve eligibility and payment disputes of more than $500,000.  Disaster Recovery Reform Act of 2018, § 1219; 42 U.S.C.A. § 5189a(d) (2018).  In FEMA arbitration proceedings, the CBCA does not act as part of the Federal Judiciary.  Rather, the role of the CBCA in FEMA arbitration proceedings is to "'interpret the law

the statute gives the right to appeal to the applicant, who perfects its appeal by filing it within sixty days after receiving notice of the funding denial. The statute does not contemplate that, once an applicant files a timely appeal within the sixty-day deadline contemplated by the statute, the appeal may retroactively be deemed untimely because FEMA's designated agent for accepting the applicant's appeal did not act appropriately in subsequently administering the timely-filed appeal. *In the Matter of City of Beaumont, Texas*, CBCA 7222-FEMA at 8 (January 12, 2022); *see also In the Matter of Consolidated North County Levee District*, CBCA 7244-FEMA, 7245-FEMA at 3 (June 2, 2022) (citing *City of Beaumont* and noting FEMA initially raised the issue of the State's untimely forwarding of applicant's timely appeal, but FEMA did not renew the argument in its brief as the CBCA has "previously rejected FEMA's request to dismiss an applicant's request for arbitration on such grounds").

7.    Atlanta is aggrieved by FEMA's refusal to consider the merits of the appeals because, as the applicant for disaster assistance, it has a statutory right to fair and impartial consideration of its appeal and its appeal demonstrated that the work performed and $1.2 million in costs incurred by Atlanta were properly documented and eligible for reimbursement.

---

*independently* on behalf of the Executive Branch'" and to render decisions "'as the final executive branch decision-maker.'" *In the Matter of City of Beaumont, Texas*, CBCA 7222-FEMA at 5 (Jan. 12, 2022) (quoting *Livingston Parish Government*, CBCA 6513-FEMA, 19-1, BCA ¶ 37,436 (2019) (emphasis retained) and *Bay St. Louis-Waveland School District*, CBCA 1739-FEMA, 10-1 ¶ 34,335 (2009)). Atlanta cannot avail itself of the right of arbitration provided by the Disaster Recovery Reform Act because it applies only to damage from disasters declared after August 1, 2016.

## PARTIES, JURISDICTION, AND VENUE

8.     Atlanta is a municipal corporation with its principal place of business located at 55 Trinity Avenue, S.W., Atlanta, Georgia  303030.

9.     FEMA, an agency in the Department of Homeland Security, is the federal agency delegated the authority to administer the provisions of the Stafford Act.

10.    Deanne Criswell is the Administrator of FEMA.  In that capacity, Administrator Criswell is responsible for the overall administration of FEMA. Administrator Criswell is sued in her official capacity.

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.

12.    Defendants are subject to the personal jurisdiction of this Court.

13.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because an agency of the United States is a defendant, a substantial part of the events or omissions giving rise to the claim occurred here, and Plaintiff resides here.

## REGULATORY BACKGROUND AND STATEMENT OF FACTS

### *The FEMA Public Assistance Program*

14.　FEMA's Public Assistance program, authorized by the Stafford Act, provides federal financial assistance to governmental organizations and certain private non-profit organizations following a Presidential disaster declaration.  42 U.S.C. § 5121, *et seq*.

15.　Atlanta is an eligible applicant for FEMA Public Assistance following Federal disaster declarations.  44 C.F.R. §§ 206.2(2), 206.222 (2009).

16.　FEMA uses a Project Worksheet ("PW") to document the scope of work and cost estimate for a disaster-related project funded by a FEMA grant under the Public Assistance program.  FEMA updates the PW to reflect changes to the work or cost as more information, invoices, and other documentation reflecting the actual cost of approved work become available.  Each revised PW is assigned a new "version" number, with the initial PW version being "Version 0."

17.　Once a PW is approved, FEMA obligates the federal funding for the work described in the PW.  Once obligated, funding is disbursed to the State Grantee, which then serves as grant administrator of FEMA's subgrants to all eligible applicants in the Grantee's state, including facilitating all communication between

FEMA and subgrantees and all disbursements of approved disaster assistance funding.  44 C.F.R. § 206.202(b) (2009).

*The Public Assistance Appeal Right*

18.    All applicants for federal disaster assistance have a statutory "Right of Appeal" from "[a]ny FEMA decision regarding eligibility for, from, or the amount of assistance" under Title IV of the Stafford Act.  Stafford Act § 423; 42 U.S.C. § 5189a(a).

19.    The Stafford Act provides only (1) a 60-day deadline within which the applicant "may" submit its appeal, Stafford Act § 423(a); 42 U.S.C. § 5189a(a); and (2) a 90-day period of decision within which FEMA "shall" render a decision on the appeal, Stafford Act § 423(b); 42 U.S.C. § 5189a(b).

20.    FEMA's regulations implementing this section the Stafford Act created two levels of appeal—one to the applicable FEMA Regional Administrator (a "First Appeal"), and one to the Assistant Administrator for the Recovery Directorate at FEMA headquarters (a "Second Appeal").  44 C.F.R. § 206.206(b) (2009).

21.    FEMA's regulations provided that an "*applicant*" may appeal "any determination previously made" and "must file appeals within 60 days after receipt of a notice of the action that is being appealed."  44 C.F.R. § 206.206 (2009).  The regulations also insert the State Grantee into the appeals process by requiring that

applicants file all appeals with the State Grantee.  44 C.F.R. § 206.206(a) (2009).

The regulations provided that the State Grantee "will review and forward appeals

from an applicant or subgrantee, with a written recommendation to the FEMA

Regional Administrator [or Assistant Administrator, for second-level appeals]

within 60 days of receipt."  44 C.F.R. § 206.206(a), (c)(2) (2009).[2]

22.    In accordance with the requirements of the Stafford Act, the regulations

specify that FEMA "will" take action on the appeal within 90 days after receipt from

the grantee.  44 C.F.R. § 206.206(c)(3) (2009).

23.    The regulations further insert a process by which FEMA may request

additional information from an appellant-applicant through a Request for

Information ("RFI") within 90 days following receipt of an appeal.  *Id*.  FEMA then

has 90 days following the receipt of the requested additional information to dispose

of the appeal and notify the State Grantee of the decision.  *Id*.

## *The 2009 Atlanta Flood*

24.    From September 15 to September 22, 2009, Atlanta suffered historic

catastrophic flash flooding in the metropolitan area as a result of prolonged rainfall

---

[2] FEMA amended its regulations in 2022 to, among other things, change the deadline for a State's transmittal of an appeal to FEMA from "60 days of receipt" of the appeal from the applicant, to "120 days from receipt of the FEMA decision being appealed."  The regulations were also revised to state, for the first time, that any failure of a state to forward the appeal within this 120 day period would result in dismissal of the appeal. 44 C.F.R. § 206.206(b)(1)(ii)(A) (2022).  The regulations applicable to an applicant's appeal are those that were effective at the time the relevant disaster was declared.

(the "2009 Atlanta Flood").  According to the National Weather Service, at the height of the event, an estimated 10 to 20 inches of rain occurred in less than 24 hours.

25.    The 2009 Atlanta Flood caused damage to tens of thousands of structures worth hundreds of millions of dollars and also claimed the lives of ten Georgia residents.

26.    President Barack Obama declared a major disaster on September 24, 2009 (FEMA-1858-DR), designating numerous counties eligible for FEMA Public Assistance funding, including Fulton County, Georgia, where Atlanta is located.  74 Fed. Reg. 51165-03 (Oct. 5, 2009).

### *Damage at the Robert M. Clayton Water Reclamation Center*

27.    Atlanta owns and operates one of the largest wastewater treatment plants in the Southeast, the Robert M. Clayton Water Reclamation Center ("RM Clayton" or the "Plant"), located along the banks of the Chattahoochee River.

28.    At the time of the 2009 Atlanta Flood, the Plant treated an average of 70 million gallons of wastewater per day from Atlanta, DeKalb County, and Fulton County.  The treated wastewater discharges directly into the Chattahoochee River and must comply with effluent limitations on biological oxygen demand, fecal coliform counts, solids, and other requirements.

29.     RM Clayton was severely damaged by the 2009 Atlanta Flood; substantial portions of the Plant were submerged.

30.     The Plant's critical operations areas were flooded and the Plant's electrical system was damaged, leaving RM Clayton inoperable.

31.     During the 2009 Atlanta Flood, the volume of wastewater flowing into the Plant reached record levels—two to three times the Plant's normal flow.

32.     As a result of the disaster-related damage caused to RM Clayton, Atlanta was unable to stop untreated wastewaters from flowing into the Chattahoochee River.

*The UV Disinfection System Damage*

33.     Immediately after the 2009 Atlanta Flood, Plant managers evaluated the damage at RM Clayton and took emergency efforts to restore Plant operations, including replacement of the ultraviolet disinfection system (the "UV Disinfection System").

34.     The Plant's UV Disinfection System is the final stage of the wastewater treatment process.  After the water is cleared of debris, sludge, and excess nutrients it must be disinfected by the UV Disinfection System so that it can be safely released into the Chattahoochee River.

35.    The UV Disinfection System consists of eight UV units operating in and over four parallel channels of clear flowing water.  The eight UV units have a total of 720 large high voltage UV lamps.  The radiation from these lamps disinfects the water by damaging the genetic structure of bacteria, viruses, and other pathogens, rendering them incapable of reproduction.

36.    During operation, the UV bulbs must be cleaned to ensure that the light from the bulbs is not blocked by dirt or film developing on the bulbs' surface. Cleaning requires hydraulic cylinders, wipers and wiper seals, bearings, and harnesses.  These parts of the UV Disinfection System operate in the water stream. Control parts that cannot be submerged are located in a "suitcase" that remains suspended above the water.

37.    The 2009 Atlanta Flood heavily damaged the UV Disinfection System. For example:

a.    A significant amount of wastewater solids and other foreign matter hit and damaged the UV bulbs because wastewater flowing through the channels was essentially untreated.

b.    The volume of water flowing through the bulb assemblies was at least 50 percent more than the design capacity of the UV Disinfection System and overflowed out of the channels, submerging the suitcases which house

electrical and other parts of the UV system.  The force of the water displaced the heavy aluminum channel covers and damaged the UV bulbs.

      c.    The loss of electric power to the hydraulic cylinders rendered those cleaning systems inoperable for a number of days.  Many of the hydraulic cylinders and wipers were bent out of specification by the force of the water flowing through the channels.

38.    Immediately after the flooding subsided and power was restored to the UV Disinfection System, the system control panel indicated that 90 percent of the UV bulbs and 90 percent of the ballasts had failed.  Plant personnel observed wastewater pouring out of suitcases and significant discoloration of the bulbs, among other things.

39.    Based on the assessed damage, Plant personnel immediately placed an emergency order for replacement parts at a total cost of $1,236,624.58.

40.    As a result of the replacement of the damaged parts of the UV Disinfection System, the Plant went from a fecal count 1,500 times higher than the permitted amount in October 2009 to achieving its fecal count discharge permit levels for the month of November 2009.

### *FEMA Denial of Funding of UV Disinfection System Repairs*

41.     Pursuant to 44 C.F.R. §§ 206.2 and 206.222 (2009), Atlanta is a local government eligible to apply for FEMA Public Assistance grant funding.

42.     Because the Plant was located in a designated disaster area and was damaged by the 2009 Atlanta Flood, the Plant and its component structures were facilities eligible for disaster assistance funding under FEMA's Public Assistance program. *See generally,* 44 C.F.R. §§ 206.221, .223 (2009).

43.     Work to repair and replace damage to the Plant's UV Disinfection System as a direct result of the declared 2009 Atlanta Flood disaster is eligible work under FEMA's Public Assistance program. *See generally,* 44 C.F.R. § 206.223 (2009).

44.     Therefore, Atlanta requested FEMA Public Assistance funding for damages at RM Clayton, including damage to the UV Disinfection System.

45.     On or about December 8, 2009, FEMA prepared and approved PW 1281 Version 0, to capture the costs to restore the UV Disinfection System. The estimated total project costs of PW 1281, Version 0 were $1,097,808.33—covering the then-estimated cost of replacement UV equipment, direct administrative costs, and labor.

46.     Although FEMA personnel approved PW 1281 Version 0 in December 2009, and provided it to Atlanta for signature, FEMA did not obligate funding for this version of PW 1281.

47.     FEMA assigned a new Project Officer to prepare PWs for work at RM Clayton in early 2010.  On or about September 8, 2010, FEMA revised the unobligated PW 1281 Version 0 reducing the total estimated project costs to $36,727.53.

48.     The Project Officer who made the reduction did so after noting that he was only able to locate limited documentation reflecting the number of parts changed immediately after the event.

49.     However, the invoices supporting the original estimated project cost of $1,097,808.33 approved in PW 1281 Version 0 were actually attached to the PW.

50.     The Georgia Emergency Management Agency ("GEMA")—the State Grantee acting as FEMA's subgrant administrator—notified Atlanta of FEMA's decision to reduce the project costs in PW 1281 Version 0 via letter dated March 1, 2011.

*Atlanta's Appeals*

51.     On April 28, 2011, less than 60 days after receipt of GEMA's letter, Atlanta filed a First Appeal (the "4/28/11 First Appeal") addressed to the FEMA

Regional Administrator, Region IV, through GEMA.  The First Appeal contested the decision to disallow funding and reduce the project costs in PW 1281 Version 0. Ex. 1, 4/28/11 First Appeal.

52.     By letter dated August 17, 2011, GEMA forwarded Atlanta's 4/28/11 First Appeal to FEMA Regional Administrator, Region IV.  Ex. 2, 8/17/11 GEMA Forwarding Letter.  Pursuant to GEMA's then-standard practice with respect to appeals by applicants, GEMA did not notify or otherwise communicate with Atlanta about this action.

53.     In violation of the Stafford Act, FEMA did not render a decision on the 4/28/11 First Appeal within 90 days of receipt of the appeal from GEMA.  Nor did FEMA issue a Request for Information within 90 days of receipt of the appeal from GEMA, as its regulations would permit.  Pursuant to GEMA's then-standard practice with respect to appeals by applicants, GEMA did not notify or otherwise communicate with Atlanta about this inaction by FEMA.

54.     Neither Atlanta nor GEMA was alarmed by FEMA's failure to timely respond to the 4/28/11 First Appeal because it was and remains a routine practice for FEMA to ignore its statutory deadline to render timely appeal decisions within 90 days.  In fact, it is common for FEMA to hold appeals for years before issuing a decision or Request for Information.

55.    As documented by the Office of Inspector General, FEMA's compliance with its statutory and regulatory 90-day deadline for deciding appeals was abysmal, particularly during the period in which Atlanta filed the appeals at issue in this Complaint.  OIG Report No. OIG-10-26 (Dec. 2009); OIG Report No. OIG-11-49 (Mar. 2011).

a.    In December 2009 the Department of Homeland Security Office of Inspector General ("OIG") issued a report entitled "Assessment of FEMA's Public Assistance Program Policies and Procedures" (Report No. OIG-10-26) in which it noted that "FEMA takes excessive time to process appeals because it does not (1) adhere to, or has not set, timeliness standards for the appeal determination process; (2) have a standardized system to track appeals; and (3) offer an agency-wide mediation process for appeals that have reached impasse."  Report No. OIG-10-26 at 4.

b.    In March 2011 OIG issued a report entitled, "Opportunities to Improve FEMA's Public Assistance Appeals Process" (Report No. OIG-11-49) in which it once again noted that inconsistencies with FEMA, within the Regions, and within the interactions between FEMA, the Regions, and the State Grantees created a system in which there was no standard appeals

process nor adherence to timeliness standards by FEMA, the State Grantees, and subgrantees.

56.    At no time in 2011, 2012, 2013, 2014, 2015, or 2016 did FEMA provide any notice or indication to Atlanta or to GEMA that Atlanta's 4/28/11 First Appeal was untimely, or that GEMA had forwarded the appeal untimely.

57.    Throughout 2012, 2013, and 2014, Atlanta and its insurance carrier were in a protracted dispute related to coverage for flood related losses.  In December 2014, counsel for Atlanta met with counsel for FEMA headquarters and counsel for FEMA Region IV primarily to discuss the insurance issues, but during the meeting counsel for FEMA requested that Atlanta provide a summary of the status of its various appeals of PWs related to RM Clayton.  Atlanta did so and continued to remind FEMA of its pending appeals, including the appeal for PW 1281.

58.    On November 3, 2014, Atlanta received a notice dated October 27, 2014 from GEMA that FEMA had issued another version of PW 1281.

59.    This PW version, PW 1281 Version 1, made no mention of Atlanta's pending appeal of PW Version 0.  It reiterated its previous determination estimating costs to be only $36,727.53, and then deducted an additional $36,526.92 in "Anticipated Flood Insurance Proceeds."  Thus, under PW 1281 Version 1, only

$200.61 of the $1.2 million in costs incurred by Atlanta to restore its UV Disinfection System remained approved by FEMA as eligible for assistance.

60.    PW 1281 Version 1 was a decision by FEMA regarding the amount of assistance FEMA would provide to Atlanta regarding restoration of RM Clayton's UV Disinfection System.

61.    Less than 60 days later, on December 29, 2014, Atlanta filed a First Appeal addressed to the FEMA Regional Administrator, Region IV, through GEMA, contesting FEMA's determination in PW 1281 Version 1 (the "12/29/14 First Appeal"). Ex. 3, 12/29/14 First Appeal.

62.    GEMA received Atlanta's 12/29/14 First Appeal on December 30, 2014 and forwarded it to FEMA Region IV less than two weeks later by letter dated January 9, 2015.

63.    In its 12/29/14 First Appeal, Atlanta renewed the arguments in its 4/28/11 First Appeal (attaching a complete copy of the 4/28/11 First Appeal), recognizing that FEMA's regulations provided that an applicant may appeal "any determination previously made" related to an application for assistance.  44 C.F.R. § 206.206.  Atlanta also argued that FEMA's deduction of "Anticipated Insurance Proceeds" was incorrect, as Atlanta was in the midst of litigation against its insurer

and the actual amount of insurance proceeds that could be anticipated was highly uncertain. *Id*.

64.    FEMA did not render a decision or issue a Request for Information on Atlanta's 12/29/14 First Appeal within 90 days of receipt of the appeal from GEMA or for more than two years thereafter.

65.    For all of 2015, all of 2016, and the first eight months of 2017, FEMA issued no decision and otherwise made no response or Request for Information to Atlanta's timely filed and forwarded appeal.

*FEMA's Response to Atlanta's First Appeals*

66.    FEMA issued a Request for Information to Atlanta by letter dated August 31, 2017 (the "RFI")—2,317 days after Atlanta filed its 4/28/11 First Appeal and 976 days after Atlanta filed its 12/29/14 First Appeal.

67.    In the 2017 RFI, FEMA, for the first time, raised the issue of the Grantee's timeliness in forwarding Atlanta's 4/28/11 First Appeal.  FEMA stated that the record did not contain sufficient information documenting that GEMA transmitted Atlanta's 4/28/11 First Appeal for Version 0 to FEMA within 60 days of receipt as specified by 44 C.F.R. § 206.206(c)(2).  FEMA also stated that it did not receive the appeal package until June 19, 2014.  *Id*.

68.    FEMA's RFI did not address Atlanta's 12/29/14 First Appeal.

69.     Atlanta timely responded to FEMA's RFI on September 15, 2017.

70.     FEMA did not render a decision or issue a Request for Information on Atlanta's 4/28/11 First Appeal or 12/29/14 First Appeal within 90 days of receipt of Atlanta's response to FEMA's RFI.

71.     FEMA's compliance with its statutory and regulatory 90-day deadline for deciding appeals continued to be abysmal into 2017.  GAO Report No. GAO-18-143.

72.     The Government Accountability Office ("GAO") issued a Report in December 2017 on the timeliness of FEMA's Public Assistance appeals processing. GAO-18-143.  This Report summarized the timeliness of FEMA's Public Assistance appeals processing in 2016 and 2017.  It found that FEMA timely decided appeals only about ten percent of the time.

73.     In this case, FEMA's final administrative action was issued seven years after Atlanta's appeals were forwarded to FEMA.

74.     FEMA issued a First Appeal Determination on January 2, 2018—more than eight years after the 2009 Atlanta Flood, 2,441 days after Atlanta filed the 4/28/11 First Appeal, 1,100 days after Atlanta filed the 12/29/2014 First Appeal, and 110 days after Atlanta transmitted to FEMA its response to FEMA's untimely RFI. Ex. 4, 1/2/2018 First Appeal Decision.

75.    FEMA's First Appeal Determination addressed Atlanta's 4/28/11 First Appeal and the non-insurance portions of its 12/29/14 First Appeal.  FEMA reserved all insurance-related issues for a separate appeal response.  *Id*.

76.    In its First Appeal Determination, FEMA refused to consider the substantive issues in Atlanta's 4/28/11 and 12/29/14 First Appeals, solely because FEMA did not receive the 4/28/11 First Appeal from GEMA within 60 days of GEMA's receipt of the First Appeal from Atlanta.  *Id*.

77.    FEMA claimed in its First Appeal Determination that Atlanta's appeal rights had lapsed due to GEMA's untimeliness in forwarding the appeal timely filed by Atlanta.  The First Appeal Determination further claimed that FEMA has consistently applied the filing deadlines to both Subgrantees and to Grantees since 2000.  *Id*.  (FEMA's reference to Subgrantee deadlines is irrelevant, as Subgrantee Atlanta timely filed both the 4/28/11 and 12/29/14 First Appeals; only the Grantee GEMA's forwarding of the 4/28/11 First Appeal was delayed.)

78.    In fact, the record of FEMA's published Second Appeal Decisions indicates that the opposite was true until approximately June of 2016.  Prior to approximately June of 2016, state grantees regularly forwarded timely appeals to FEMA beyond 60 days, and FEMA did not apply 44 C.F.R. § 206.206(c)(2) to divest those applicants' statutory "RIGHT OF APPEAL."

79.     From 2009 to 2014, FEMA issued 548 Second Appeal decisions. Among them, were at least 98 (18%) in which the applicant's First Appeal, Second Appeal, or both had been forwarded by the grantee more than 60 days after the date of the appeal.  In all of these decisions, FEMA either granted or denied the appeals on the merits.  In none of these decisions did FEMA deny an appeal due to late forwarding by the state grantee.  Only in one of the 98 decisions did FEMA deny an appeal in part due to the state grantee's 677-day delay in forwarding the appeal.  The 98 decisions are listed in Appendix 1 to this Complaint.

80.     It was not until on or about the time FEMA issued a *City of Plattsburg* Second Appeal Determination on June 8, 2016 that FEMA began time-barring appeals as a matter of policy when the appeals were timely submitted by applicants under Stafford Act § 423 but forwarded to FEMA by state grantees beyond 60 days. FEMA Second Appeal Determination, *City of Plattsburgh*, FEMA-4020-DR-NY (June 8, 2016).  Since the *City of Plattsburgh* Second Appeal Determination in June of 2016, FEMA has denied as untimely an additional 49 appeals which were timely submitted by applicants under Stafford Act § 423 but forwarded more than 60 days later by state grantees.  Those 50 decisions are listed as Appendix 2 to this Complaint.

81.     Additionally, FEMA policy applicable to the 2009 Atlanta Flood provided grantees (here, GEMA) with the ability to extend the appeal deadline where necessary to gather additional information.  Public Assistance Guide, FEMA 322, at 113 (2007) ("The State will review the appeal documentation and request additional information if necessary.  The State will then prepare a written recommendation on the merits of the appeal and forward that recommendation to FEMA within 60 days of its receipt of the appeal letter or receipt of additional information that it had requested.") (emphasis added).

82.     Regarding Atlanta's 12/29/2014 First Appeal, FEMA asserted in its First Appeal Determination that its decision to deobligate funding in PW 1281 Version 1 "merely reiterate[d] eligibility decisions in previous versions" and thus did "not create new appeal rights beyond the 60-day procedural requirements stated in both Section 423(a) of the Stafford Act and 44 C.F.R. [§] 206.206(c)(1)."

83.     There is no regulation or published FEMA policy which prohibits an applicant from delaying appeal of any of the many individual determinations in an initial version of a PW until FEMA has reviewed and made final determinations on all issues in a later decision or later PW version.

84.     Section 423 of the Stafford Act affords an applicant a "Right of Appeal" for "[a]ny decision regarding eligibility for from, or amount of assistance".  FEMA's

regulations unequivocally reinforce this right providing, "An eligible applicant . . . may appeal *any determination previously made*".  44 C.F.R. § 206.206 (2009) (emphasis added).

### *FEMA's Final Agency Action*

85.    On March 1, 2018, less than 60 days after FEMA issued its First Appeal Determination, Atlanta timely filed its Second Appeal through GEMA, the State Grantee.  Ex. 5, Atlanta Second Appeal.

86.    In its Second Appeal, Atlanta argued primarily that FEMA's decision denied Atlanta its statutory right of appeal, and the decision was contrary to law.  *Id.*; Stafford Act §§ 423, 325; 42 U.S.C. §§ 5189a, 5165d.

87.    GEMA timely transmitted Atlanta's Second Appeal of PW 1281 (which covered both Version 0 and Version 1) to FEMA by letter dated March 5, 2018.

88.    On May 10, 2018, FEMA issued its Second Appeal Decision reiterating its First Appeal Decision determination that Atlanta's appeal rights lapsed with respect to both the 4/28/11 First Appeal and the 12/29/14 First Appeal because GEMA did not forward the timely filed 4/28/11 First Appeal within 60 days.  Ex. 6, FEMA Second Appeal Determination.

89.     FEMA regulations provide that a Second Appeal Determination "shall be the final administrative decision of FEMA."  44 C.F.R. § 206.206(e)(3).

## COUNT I

### (Agency Action Contrary to Stafford Act § 423)

90.     Atlanta incorporates by reference the allegations set forth in paragraphs 1 through 89 above as if fully set forth herein.

91.     The Stafford Act affords applicants for Public Assistance an administrative "Right of Appeal" from "any decision regarding eligibility for, from, or amount of assistance…within 60 days after the date on which the applicant for such assistance is notified of the award or denial of award of such assistance." Stafford Act § 423(a); 42 U.S.C. § 5189a(a).

92.     FEMA made a decision regarding eligibility for, from, or amount of assistance when it issued PW 1281 Version 1.

93.     Atlanta timely appealed FEMA's decision to disallow $1,236,423.97 in costs under PW 1281 Version 1 within 60 days of its notice of FEMA's decision.

94.     GEMA timely forwarded Atlanta's 12/29/14 First Appeal to FEMA within 60 days of its receipt of the Appeal from Atlanta in accordance with 44 C.F.R. § 206.206(c)(2) (2009).

95.     After FEMA issued a First Appeal decision on January 2, 2018 denying Atlanta's 12/29/14 First Appeal, Atlanta timely appealed the 1/2/2018 First Appeal Decision on March 1, 2018, which GEMA timely forwarded to FEMA on March 5, 2018.

96.     FEMA denied Atlanta's Second Appeal on timeliness grounds, without consideration of the merits.

97.     FEMA's 5/10/18 Second Appeal Determination, in which FEMA refused to consider Atlanta's 12/29/14 First Appeal, which was timely filed and timely forwarded, denied Atlanta's fair and impartial consideration of its timely exercised statutory RIGHT OF APPEAL.

98.     Under 5 U.S.C. § 706, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2).

99.     FEMA's 5/10/18 Second Appeal Determination is a final agency action that is not in accordance with law, and in excess of its statutory authority under the Stafford Act, because it violates Atlanta's statutory "RIGHT OF APPEAL" as provided by Congress under the Stafford Act.

## COUNT II

### (Agency Action Contrary to Stafford Act § 423)

100.   Atlanta incorporates by reference the allegations set forth in paragraphs 1 through 89 above as if fully set forth herein.

101.  The Stafford Act affords applicants for disaster assistance an administrative "RIGHT OF APPEAL" from "any decision regarding eligibility for, from, or amount of assistance…within 60 days after the date on which the applicant for such assistance is notified of the award or denial of award of such assistance." Stafford Act § 423(a); 42 U.S.C. § 5189a(a).

102.   As articulated by the CBCA, Stafford Act § 423 "gives the right to appeal to the applicant, who perfects its appeal by filing it within sixty days after receiving notice of the funding denial." *In the Matter of City of Beaumont, Texas*, CBCA 7222-FEMA at 8 (Jan. 12, 2022); *see also In the Matter of Consolidated North County Levee District*, CBCA 7244-FEMA, 7245-FEMA at 3 (June 2, 2022).[3] Further, regarding FEMA's administrative framework related to Stafford Act § 423, the CBCA determined that an appeal may not "retroactively be deemed untimely because FEMA's designated agent for accepting the applicant's appeal [the state

---

[3] *See infra.* at footnote 3.

Grantee] did not act appropriately in subsequently administering the timely-filed appeal." *City of Beaumont,* CBCA 7222-FEMA at 8.

103.   Atlanta timely appealed FEMA's decision to deny its First Appeals of PW 1281 Version 0 (by its 4/28/11 First Appeal and Atlanta Second Appeal) and Version 1 (by its 12/29/14 First Appeal and Atlanta Second Appeal) within 60 days of its receipt of FEMA's notice of ineligibility determinations.

104.   FEMA's Second Appeal Decision asserts Atlanta's appeal rights lapsed for PW 1281 Version 0 and PW 1281 Version 1 because GEMA forwarded the appeal for Version 0, (4/28/11 First Appeal) more than 60 days after Atlanta TIMELY filed it.

105.   Congress has given "the applicant" for disaster assistance a "RIGHT OF APPEAL" from FEMA's denial of such assistance.  Stafford Act § 423; 42 U.S.C. § 5189a.  It is not disputed that Atlanta is the applicant and GEMA is the grantee.  Stafford Act § 423 makes no reference to grantees.  Outside of the Stafford Act, FEMA has chosen to involve state grantees in its administrative process for reviewing appeals.

106.   As specified by the Stafford Act, FEMA may adopt rules to ensure "the fair and impartial consideration of appeals" in a manner consistent with the Stafford Act.  Stafford Act § 423(c); 42 U.S.C. § 5189a(c).  However, FEMA's administrative

process may not nullify, contradict, abridge, or alter Applicant-Atlanta's "RIGHT OF APPEAL" provided by the Stafford Act.

107. Atlanta properly filed its appeals for both PW 1281 Version 0 and PW 1281 Version 1 in accordance with the Stafford Act and FEMA's regulations. FEMA's refusal to consider Atlanta's appeals based on FEMA's determination that the appeals are untimely because FEMA alleges that State grantee, GEMA, forwarded one of the appeals beyond 60 days after Atlanta's timely submission, is contrary to Stafford Act § 423(a).

108. Under 5 U.S.C. § 706, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2).

109. FEMA's 5/10/18 Second Appeal Determination is a final agency action that is not in accordance with law, and in excess of its statutory authority, because it violates Atlanta's statutory "RIGHT OF APPEAL" as provided by Congress under the Stafford Act.

## COUNT III

### (Agency Action Contrary to Stafford Act § 325(a)(1))

110.   Atlanta incorporates by reference the allegations set forth in paragraphs 1 through 89 above as if fully set forth herein.

111.   Stafford Act § 325(a)(1) provides the "President shall provide for public notice and opportunity for comment before adopting any new or modified policy that—(A) governs implementation of the public assistance program administered by the Federal Emergency Management Agency under this chapter; and (B) could result in a significant reduction of assistance under the program."  42 U.S.C. § 5165c(a)(1).

112.   Prior to approximately 2016, FEMA had no policy stating that it would refuse to consider the merits of or deny appeals of public assistance decisions based on the failure of the grantee to forward an applicant/subgrantee's appeal to FEMA within the prescribed regulatory timeframe.

113.   As indicated by the FEMA Second Appeal Determinations in Appendices 1 and 2 to this Complaint, FEMA's policy prior to 2016, was to consider the merits of appeals of disaster assistance decisions regardless of whether the appeal was forwarded to FEMA by the grantee within 60 days of the applicant's submission to the grantee.  *See* Appendices 1 and 2.

114.   Almost 100 second appeals decided by FEMA over the six years from 2009-2014 – 18% of all second appeal decisions issued during that time – were decided on the merits despite late forwarding by the grantee.

115.   On or about June of 2016, beginning with or about the *City of Plattsburgh* Second Appeal Determination, FEMA abruptly changed its policy when it began refusing to consider the merits of appeals timely filed by applicants but which were not forwarded to FEMA by State grantees within 60 days.

116.   After *City of Plattsbugh*, FEMA's policy has consistently been to deny appeals as untimely when forwarded by grantees beyond 60 days even when applicants have properly exercised their statutory "RIGHT OF APPEAL" by timely filing with state grantees.

117.   FEMA has yet to provide notice or an opportunity for comment regarding its new or modified policy to refuse to consider appeals forwarded by grantees beyond 60 days, and FEMA's application of this new policy to deny consideration of Atlanta's appeals could (and did) result in a significant reduction of disaster assistance to Atlanta.

118.   By refusing to consider the merits of Atlanta's timely filed appeals based on its new or modified policy implemented without notice or an opportunity

to comment, FEMA has taken action contrary to Stafford Act § 325(a)(1) adversely affecting Atlanta.

119.   Under 5 U.S.C. § 706, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law."  5 U.S.C. § 706(2).  FEMA's denial of Atlanta's Second Appeal is a final agency action that is not in accordance with law, because it violates Atlanta's statutory "RIGHT OF APPEAL" as provided by Congress under the Stafford Act, by application of a policy that violates Stafford Act § 325(a)(1).

## COUNT IV

### (Agency Action Contrary to Stafford Act § 325(a)(2))

120.   Atlanta incorporates by reference the allegations set forth in paragraphs 1 through 89 above as if fully set forth herein.

121.   Stafford Act § 325(a)(2) provides that "Any policy adopted under paragraph (1) shall apply only to a major disaster or emergency declared on or after the effective date on which the policy is adopted."  42 U.S.C. § 5165c(a)(2).

122.   At the approximate time of FEMA's June 8, 2016 *City of Plattsburgh Second* Appeal Determination, and thereafter, FEMA abruptly changed its policy

and began denying applicants' their RIGHT OF APPEAL by refusing substantive consideration of appeals timely filed by applicants, but forwarded to FEMA by state grantees beyond 60 days.

123.   As indicated by the FEMA Second Appeal Determinations in Appendices 1 and 2 to this Complaint, FEMA's policy up to approximately the time of *City of Plattsburgh* was to consider the merits of an applicant's timely filed appeal, regardless of whether the grantee forwarded that appeals to FEMA within 60 days.

124.   Since on or about the time of *City of Plattsburgh*, FEMA's policy has been to refuse consideration of the merits and deny appeals as untimely when forwarded by grantees beyond 60 days, even when applicants have properly exercised their statutory "RIGHT OF APPEAL" by timely filing with state grantees.

125.   The President authorized the Federal disaster declaration for the 2009 Atlanta Flood on September 24, 2009.  FEMA changed its policy on or about June of 2016.   Therefore, the disaster declaration clearly preceded FEMA's policy change.

126.   By refusing to consider the merits of Atlanta's timely filed appeals based on its new or modified policy implemented after the disaster declaration,

FEMA has taken action contrary to Stafford Act § 325(a)(2) adversely affecting Atlanta.

127.   Under 5 U.S.C. § 706, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to be or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law."  5 U.S.C. § 706(2).  FEMA's denial of Atlanta's Second Appeal is a final agency action that is not in accordance with law, and in excess of its statutory authority, because it violates Atlanta's statutory "RIGHT OF APPEAL" as provided by Congress under the Stafford Act, by application of a policy that violates Stafford Act § 325(a)(2), 42 U.S.C. § 5165c(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff City of Atlanta requests entry of final judgment:

(1)    setting aside FEMA's Second Appeal Decision as contrary to law;

(2)    directing FEMA to provide fair and impartial consideration of the merits of Atlanta's First Appeals filed in 2011 and 2014; and

(3)    awarding Atlanta such other relief as may be just, proper, and equitable.

Respectfully submitted, this 9th day of May 2024.

/s/ Michelle F. Zaltsberg
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Michelle F. Zaltsberg, Esq.
Georgia Bar No.  402089
*Primary Office:*
200 South Orange Avenue
Suite 2900
Orlando, Florida 32801
Telephone:  (407) 367-5433
Facsimile:  (407) 841-0325
Email:  mzaltsberg@bakerdonelson.com
*Local Office:*
3414 Peachtree Road, N.E.
Suite 1500
Atlanta, GA 30326
Telephone:  (404) 577-6000
Facsimile:  (404) 221-6501


Ernest B. Abbott, Esq.
*Motion for Special Admission*
*forthcoming*
D.C. Bar No. 925503
901 K Street NW
Suite 900
Washington, DC  20001
Telephone:  (202) 508-3425
Facsimile:  (202) 220-2225
Email:  eabbott@bakerdonelson.com

Wendy Huff Ellard, Esq.
*Motion for Special Admission*
*forthcoming*
Mississippi Bar No. 102601
One Eastover Center
100 Vision Drive
Suite 400

Jackson, Mississippi  39211
Telephone:  (601) 969-4681
Facsimile:  (601) 592-2405
Email:  wellard@bakerdonelson.com

Parker Wiseman, Esq.
*Motion for Special Admission*
*forthcoming*
Mississippi Bar No. 102863
One Eastover Center
100 Vision Drive
Suite 400
Jackson, Mississippi  39211
Telephone:  (601) 351-2435
Facsimile:  (601) 592-2405
Email:  pwiseman@bakerdonelson.com

*Counsel for Plaintiff City of Atlanta,*
*Georgia*