## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CITY OF ATLANTA, GEORGIA,

    Plaintiff,

              v.

FEDERAL EMERGENCY MANAGEMENT
AGENCY and DEANNE CRISWELL, *in her
official capacity,*

    Defendants.

Civil Action No.
1:24-cv-02039-SDG

## OPINION AND ORDER

This case centers on federal disaster relief funds sought by the City of Atlanta (Atlanta). The Federal Emergency Management Agency (FEMA) denied Atlanta's administrative appeal for funds on procedural timeliness grounds, and moves to dismiss this case [ECF 24] on that same ground. The Court, having carefully considered the parties' briefing and with the benefit of oral argument, **DENIES** the motion.

## I.    Factual Allegations

At this motion to dismiss stage, the Court treats all well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

A.    **The Initial Application Process**

1.    **Regulatory Framework**

Congress has adopted laws to provide assistance to state and local governments responding to damage caused by natural disasters. 42 U.S.C. § 5121 *et seq.* (the Stafford Act). Under the Stafford Act, when the President has issued a disaster declaration, FEMA is authorized to provide financial assistance to these governments (and others) through its Public Assistance program.[1] A comprehensive set of regulations governs the process for an applicant (like Atlanta) to seek such financial assistance. 44 C.F.R. §§ 206.2(a)(2), 206.222(a) (2009);[2] *see generally* 44 C.F.R. pt. 206.

As part of the review process for an application, FEMA uses a Project Worksheet (PW) to document the scope of the work and cost estimate for a particular project submitted by the applicant.[3] After approval, the funding for the PW is "obligated" and then disbursed.[4] But the funds are not directly provided by FEMA to the applicant. Rather, the disaster relief funds are disbursed to and administered by the State Grantee—*i.e.*, the State where the applicant is located

---

[1]    ECF 1, ¶ 14.

[2]    The parties do not dispute that the 2009 version of the regulation applies here. *See, e.g.*, ECF 25, at 4 n.1.

[3]    ECF 1, ¶ 16.

[4]    *Id.* ¶ 17.

(or, as we shall see shortly, an agent designated by that State). The State Grantee administers all FEMA grants for applicants in that State.[5] *Id.* § 206.222 (2009).

### 2. Atlanta's Application (PW 1281 v.0)

As a result of severe flooding in Georgia in September 2009, then-President Barak Obama declared a major disaster in several Georgia counties, including Fulton County where Atlanta is located.[6] The declaration of a "major disaster" triggered Atlanta's ability to seek funding through the Public Assistance program.[7] 42 U.S.C. § 5170(a). Atlanta applied for funds for repairs needed at the Robert M. Clayton Water Reclamation Center (the Plant), which cost over $1.2 million.[8] Under the applicable regulation (but not the Stafford Act itself), the process for submitting its application required that Atlanta go through Georgia's State Grantee—the Georgia Emergency Management Agency (GEMA).[9]

Around December 8, 2009, FEMA approved estimated costs of a little under $1.1 million for repairs at the Plant based on Atlanta's initial PW (PW 1281 v.0). But FEMA did not obligate the funding at that time.[10] Despite this initial approval,

---

[5]   *Id.*

[6]   *Id.* ¶ 26; Georgia; Amendment No. 3 to Notice of a Major Disaster Declaration, 74 Fed. Reg. 51165-03 (Oct. 5, 2009).

[7]   ECF 1, ¶ 26.

[8]   *Id.* ¶¶ 24, 26–32, 39, 41–44.

[9]   *Id.* ¶¶ 17, 21–23, 50. GEMA is not a party to this litigation.

[10]  *Id.* ¶¶ 45-46.

around September 8, 2010, FEMA reduced the estimated costs to less than $37,000.[11] In its role as State Grantee, GEMA informed Atlanta about this decision on March 1, 2011.[12]

### B.    The Appeals Process

#### 1.    Regulatory Framework

Under the Stafford Act, an applicant for assistance may file an appeal from the denial of an application within 60 days after receiving notice of the denial. 42 U.S.C. § 5189a(a). That statutory mandate is implemented through a regulation that prescribes an appeals process, with the applicant submitting its appeal to the State Grantee, and imposing certain timeframes for the applicant, State Grantee, and FEMA to act. 44 C.F.R. § 206.206(a), (c) (emphasis added) (2009). GEMA's failure to comply with its timeframe is at the heart of this dispute.

#### 2.    Atlanta's Appeal (the April 2011 First Appeal)

On April 28, 2011, Atlanta timely appealed the reduction of estimated costs in PW 1281 v.0 from over a million dollars to less than $37,000.[13] This was within the required 60 days. GEMA, however, did not forward Atlanta's April 2011 First Appeal to the FEMA Regional Administrator until August 17, 2011—more than 60

---

[11]  *Id.* ¶ 47.

[12]  *Id.* ¶ 50.

[13]  *Id.* ¶¶ 47, 51.

days later.[14] Nor did GEMA notify Atlanta about FEMA's denial or the delay in forwarding the appeal.[15] According to Atlanta, this was GEMA's then-standard practice.[16]

FEMA did not render a decision on the April 2011 First Appeal or ask for additional information within 90 days as provided for in the regulation, and GEMA did not inform Atlanta that FEMA did not act on the appeal within that time.[17] According to Atlanta, this was not alarming because FEMA regularly ignored its own deadline to rule on appeals, sometimes taking *years* to issue a decision.[18]

### C.    The Second Go-Around

#### 1.    Atlanta's Application (PW 1281 v.1)

While Atlanta's April 2011 First Appeal (concerning PW 1281 v.0) was still pending, on November 3, 2014, Atlanta learned that FEMA had issued PW 1281 v.1, which reiterated FEMA's position that the estimated costs for the repairs to the Plant were less than $37,000.[19] FEMA then deducted "anticipated flood

---

14    *Id.* ¶ 52.

15    *Id.*

16    *Id.*

17    *Id.* ¶ 53.

18    *Id.* ¶ 54. *See generally id.* ¶¶ 54–55, 71–72.

19    *Id.* ¶¶ 58–59.

insurance proceeds."[20] FEMA's conclusion, then, was that Atlanta was only entitled to receive about $200 ($200.61 to be exact) of the $1.2 million Atlanta sought for repairs to the Plant.[21]

### 2.    Atlanta's Appeal (the December 2014 First Appeal)

Less than 60 days later, on December 29, 2014, Atlanta filed (through GEMA) its appeal concerning PW 1281 v.1.[22] GEMA timely submitted it to the FEMA Regional Administrator on January 9, 2015.[23] The December 2014 First Appeal (1) renewed the arguments Atlanta made in its April 2011 First Appeal and (2) asserted that the deduction of anticipated insurance proceeds was incorrect.[24] FEMA did not render a decision on the December 2014 First Appeal or ask for additional information within 90 days, as the regulation directs.[25]

### D.    FEMA Finally Acts.

On August 31, 2017—over six years after the April 2011 First Appeal— FEMA issued a request for information (RFI) to Atlanta.[26] The RFI was the first

---

[20]  *Id.* ¶ 59.

[21]  *Id.*

[22]  *Id.* ¶ 61.

[23]  *Id.* ¶ 62.

[24]  *Id.* ¶ 63. Atlanta does not press claims in this case related to the insurance-proceed deduction. *See generally* ECF 1.

[25]  *Id.* ¶¶ 64–65.

[26]  *Id.* ¶¶ 66–67.

time FEMA raised a concern about the timeliness of the April 2011 First Appeal, asserting that there was insufficient documentation to show that GEMA had transmitted the appeal within 60 days of receiving it as required by the regulation.[27] Atlanta timely responded to the RFI.[28]

On January 2, 2018, FEMA issued its First Appeal Determination, denying (1) the April 2011 First Appeal and (2) the December 2014 First Appeal to the extent that appeal was based on the first one.[29] FEMA refused to consider the substance of Atlanta's appeals because the April 2011 First Appeal had not timely been forwarded to it by GEMA.[30] In fact, FEMA asserted that it lacked the *ability* to consider the appeal because it was not timely filed.[31] FEMA's denial further asserted that it had, since 2000, consistently applied this time bar to appeals not timely forwarded by State Grantees.[32] But Atlanta alleges that, before June 2016, FEMA did not regularly decline to consider appeals timely filed with State Grantees but untimely forwarded by them to FEMA.[33]

---

[27]   *Id.* ¶ 67.

[28]   *Id.* ¶ 69.

[29]   *Id.* ¶¶ 74–76.

[30]   *Id.* ¶¶ 76–77.

[31]   ECF 1-6, at 1 (citing 44 C.F.R. § 206.206(c)(2)). *See generally* ECF 1-6.

[32]   ECF 1, ¶ 77; ECF 1-6, at 6–7.

[33]   ECF 1, ¶¶ 78–80.

### E. Atlanta's Second Appeal and FEMA's Second Denial

Atlanta timely submitted to GEMA its appeal of FEMA's First Appeal Determination.[34] Atlanta argued that FEMA's procedural decision not to substantively review the appeal wrongfully denied Atlanta its statutory right of appeal.[35] GEMA timely transmitted the appeal to FEMA.[36]

On May 10, 2018, FEMA issued its Second Appeal Determination, which reiterated FEMA's claim that Atlanta's appeal rights had lapsed because GEMA did not timely forward the April 2011 First Appeal.[37] This was FEMA's final administrative determination. 44 C.F.R. § 206.206(e)(3) (2009).

### F. Atlanta Brings Suit.

Atlanta filed this suit in May 2024 against FEMA and its Administrator (in an official capacity)[38] pursuant to the Administrative Procedure Act, seeking judicial review of FEMA's refusal to substantively consider its appeals. The Administrative Procedure Act provides for review of certain final agency actions.

---

[34] *Id.* ¶ 85.

[35] *Id.* ¶ 86.

[36] *Id.* ¶ 87.

[37] *Id.* ¶ 88; ECF 1-8.

[38] The complaint names Deanne Criswell as the Administrator, but the person currently serving as the acting Administrator is Cameron Hamilton. https://www.fema.gov/profile/cameron-hamilton (last visited Mar. 26, 2025) [https://perma.cc/5LES-2KA7]. This apparent change in personnel does not affect the Court's analysis.

5 U.S.C. §§ 702, 704. The Court may compel action "unlawfully withheld" by the agency and set aside actions "in excess of [the agency's] statutory jurisdiction," implemented "without observance of procedure required by law," or that are arbitrary or capricious. *Id.* § 706(1), (2)(A), (2)(C), (2)(D). Atlanta asserts causes of action based on alleged violations of the Stafford Act: denying its right to appeal PW 1281 v.1 (Count I) and PW 1281 v.0 (Count II); adopting without the necessary notice-and-comment period a policy of denying appeals timely filed with the State Grantee but untimely forwarded by it (Count III); and applying that policy retroactively to appeals for disaster relief for declared disasters occurring before the policy's adoption (Count IV). Atlanta asks for an order directing FEMA to consider the substance of its appeals.[39]

Defendants move to dismiss, arguing that the denials of Atlanta's April 2011 First Appeal and December 2014 First Appeal without reaching the merits were proper.[40] Alternatively, Defendants contend that FEMA's refusals to accept Atlanta's purportedly untimely appeals are non-reviewable discretionary acts that the Court lacks jurisdiction to consider.[41]

---

[39]   ECF 1, *ad damnum* clause.

[40]   ECF 24.

[41]   ECF 24-1, at 18–21.

## II.    Discussion

Defendants state that FEMA is authorized to create regulations, including those that applied to Atlanta's appeals. The regulations set deadlines, and FEMA did not receive the April 2011 First Appeal by that deadline. End of story, Defendants argue. What Defendants do *not* argue is that FEMA lacked the *authority* to consider untimely appeals (which is what the First and Second Appeal Determinations say).[42] Instead, Defendants now contend that FEMA's actions weren't arbitrary or capricious because FEMA followed "unambiguous regulations" in procedurally rejecting the appeals.[43] Atlanta responds that this policy of denying appeals timely filed by the applicant but untimely submitted by the State Grantee is contrary to the Stafford Act, FEMA's own regulations, and FEMA's past interpretation of its regulations.[44]

The parties' ultimate dispute boils down to a pure question of law: Was Atlanta's April 2011 First Appeal untimely under 42 U.S.C. § 5189a and 44 C.F.R. § 206.206 (2009) because GEMA failed to forward it within 60 days after receiving it? If not, then the December 2014 First Appeal was necessarily timely too. But the immediate question the Court faces is whether the complaint states a

---

[42]    *Compare* ECF 24-1*, with* ECFs 1-6 *and* 1-8.

[43]    *See, e.g.*, ECF 24-1, at 14.

[44]    ECF 25, at 9–21.

claim.[45] It does. Atlanta has adequately pleaded that its appeals were timely under the Stafford Act and the applicable regulation such that FEMA's refusal to consider their substance improperly denied Atlanta its statutory appeal rights.

### A.    A Plain Reading of the Stafford Act and Relevant Regulation Supports Atlanta's Claims.

As noted above, the Stafford Act provides that "[a]ny decision regarding eligibility for, from, or amount of assistance . . . may be appealed within 60 days after the date on which the applicant for such assistance is notified of the award or denial of award of such assistance." 42 U.S.C. § 5189a(a). During the period relevant here, the implementing regulation imposed the following deadlines:

> (c) Time Limits.
>
> (1) Appellants *must* file appeals within 60 days after receipt of a notice of the action that is being appealed.
>
> (2) The [state] grantee *will* review and forward appeals from an applicant or subgrantee, with a written recommendation, to the Regional Administrator within 60 days of receipt.
>
> (3) Within 90 days following receipt of an appeal, the Regional Administrator (for first appeals) or Assistant Administrator for the Disaster Assistance Directorate (for second appeals) *will* notify the grantee in writing of

---

[45] Under FED. R. CIV. P. 12(b)(6), a complaint must contain enough factual allegations to state a claim to relief that is plausible on its face—that is, the plaintiff must plead enough facts for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010).

the disposition of the appeal or of the need for additional
information. . . .

44 C.F.R. § 206.206(c) (2009) (emphasis added). In other words, to perfect its
appeal, all the Stafford Act requires an applicant to do is file the appeal within 60
days after receiving notice of the action it is appealing. 42 U.S.C. § 5189a(a). Under
the regulation, the applicant must file the appeal with the State Grantee within
that timeframe. 44 C.F.R. § 206.206(a), (c)(1). That's it.

The subsequent steps and associated deadlines set by regulation are not
mandated by the Stafford Act at all. More practically, they are entirely out of the
applicant's control: The State Grantee "*will* review and forward appeals" to the
FEMA Regional Administrator and the Regional Administrator "*will*" notify the
State Grantee of the appeal's disposition. *Id.* § 206.206(c)(2), (3) (emphasis added).
Nothing in this language suggests that FEMA loses the ability to consider an
applicant's appeal if, through no fault of the applicant's own, the State Grantee
(or FEMA itself) fails to timely do its part under these provisions. Nor does the
Stafford Act or regulation imply that FEMA may refuse to even *consider* an appeal
timely submitted by the applicant to the State Grantee.

Further, the use of different words to describe this tri-partite system
signifies different responsibilities. The applicant "must" do something; the State
Grantee and FEMA "will" do so: These provisions do not impose the same
timeliness duties on all parties. Nor can the word "will" mean something for the

State Grantee on the one hand but something different for FEMA on the other, as FEMA seems to argue. A. Scalia & B. Garner, READING LAW 170–71 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning.").

During oral argument, Defendants' counsel acknowledged as much—arguing that the word "must" in the regulation reflects a command and thus a requirement but that the word "will" reflects "discretion."[46] If the word "will" does not require FEMA to act within 90 days, it makes no sense for Defendants to insist that *GEMA* was required to act within 60 days lest Atlanta fall victim to FEMA's interpretation of the regulation and lose its appeal rights—particularly when Atlanta did all that it was *required* to do under the statute and the regulation.

Defendants' contention that FEMA had the right to deny an appeal if an entity outside the applicant's control failed to comply with the regulation's timetable is not consistent with the text of either the Stafford Act or the regulation itself. Moreover, FEMA's interpretation of the regulation improperly imposes conditions on an applicant's right to an appeal that find no basis in the text of § 5189a(a). Undersigned finds persuasive an administrative decision on this precise issue. *In re City of Beaumont*, CBCA 7222-FEMA, at 7–8 (Jan. 12, 2022)

---

[46]    ECF 36.

("FEMA essentially transforms the Stafford Act's sixty-day filing deadline into a 120-day bifurcated deadline. . . . FEMA changes the statutory mechanism for the appeal process by injecting the [State Grantee] into the process, leaving the applicant with no control over the recipient's action to forward the appeal to FEMA. The statute says nothing about any further requirement that, for the appeal to be considered timely, the recipient would have to forward it on to FEMA within the next sixty-day period.").

### B. The Stafford Act Does Not Permit FEMA to Refuse to Consider Appeals Timely Filed by the Applicant.

As an alternative to the contention that FEMA properly denied Atlanta's appeals as untimely, Defendants argue that the denial decisions are not reviewable by this Court because they were discretionary. The problem with this back-up argument is that the First Appeal Determination flatly rejected the notion that FEMA had any discretion at all.[47] That decision was incorporated into the Second Appeal Determination as well.[48] Despite Defendants' self-serving flip-flop now, the Court does not reach this lack-of-subject-matter jurisdiction argument: As should be clear from the discussion above, Atlanta pleads that FEMA lacked the authority to *refuse* to consider the substance of the appeals because Atlanta acted

---

[47] *Id.*

[48] ECF 1-8, at 7–8.

timely.[49] *See, e.g., Metro. Gov't of Nashville & Davidson Cnty. v. Fed. Emergency Mgmt. Agency*, No. 3:22-cv-540, 2024 WL 1337189, at *4–5 (M.D. Tenn. Mar. 28, 2024) (declining to find a discretionary act on a motion to dismiss when the complaint alleged no such discretion and FEMA's denial letters disclaimed any such discretion). The plain language of the Stafford Act supports Atlanta's position.

Accordingly, the Court declines to apply the reasoning espoused in *City of Pembroke Pines v. Federal Emergency Management Agency*, 510 F. Supp. 3d 1126 (S.D. Fla. 2021), on which Defendants heavily relied during oral argument. That case concluded FEMA's decision to deny the plaintiff cities' appeals of disaster funding decisions was discretionary. Here, by contrast, FEMA stated in its denial letters that it had no discretion.[50] Considering the allegations in the complaint and FEMA's declared basis for rejecting Atlanta's appeals, the Court declines to construe FEMA's decisions here as discretionary. By its plain terms, the Stafford Act does not give FEMA discretion to refuse to consider an appeal that is timely submitted by the applicant. 42 U.S.C. § 5189a(a).

Moreover, in summarily concluding that FEMA had acted in a discretionary manner, the *Pembroke Pines* court proceeded from the incorrect premise that both the Stafford Act and the regulation require appeals to be timely submitted to

---

[49]    ECF 1-6, at 6.

[50]    ECFs 1-6, 1-8.

FEMA, 510 F. Supp. 3d at 1138 ("The Stafford Act and its implementing regulations set forth a deadline by which appeals must be submitted *to FEMA*.") (emphasis in original), and treated the plaintiff cities' appeals as untimely because the State Grantee did not satisfy the regulatory timetable, *City of Pembroke Pines v. Fed. Emergency Mgmt. Agency*, 494 F. Supp. 3d 1272, 1285 (S.D. Fla. 2020). That's not what either provision says. The Stafford Act does not specify the process for appealing nor to whom the appeal must be submitted. 42 U.S.C. § 5189a(a). Nor does the regulation say that the State Grantee "must" submit the appeal to FEMA within 60 days, only that it "will." 44 C.F.R. § 206.206(c)(2).

### C.    Atlanta Has Adequately Alleged that FEMA Failed to Follow Appropriate Notice-and-Comment Procedures and Improperly Applied Its Timeliness Policy Retroactively.

Atlanta has alleged that, before June 2016, FEMA regularly considered the substance of appeals that were untimely forwarded by State Grantees.[51] Thereafter, FEMA allegedly adopted a different policy by time-barring appeals when they were timely submitted by the applicant but not by the State Grantee.[52] Since the adoption of that policy did not follow the notice-and-comment process required by the Stafford Act, 42 U.S.C. § 5165c(a)(1), Atlanta alleges that FEMA

---

[51]    *See, e.g.*, ECF 1, ¶¶ 78–80.

[52]    *Id.* ¶ 80.

acted in contravention of the Act.[53] Atlanta also pleads that FEMA improperly applied this 2016 policy change to Atlanta's appeals even though those appeals concerned a declared major disaster that took place in 2009, also in violation of the Stafford Act.[54] 42 U.S.C. § 5165c(a)(2).[55]

Defendants acknowledge the requirements of the Stafford Act[56] but assert that the policy applied to Atlanta's appeals was not new nor modified since the appeal deadlines had been the same since 1990.[57] But that is not Atlanta's allegation. Atlanta's pleading asserts that FEMA adopted a different *interpretation* of a regulation, the language of which had not changed, which required notice-and-comment. Indeed, that's exactly what FEMA did when it adopted the current version of the regulation. Public Assistance Appeals and Arbitrations, 86 Fed. Reg. 45660-01 (Aug. 16, 2021) (codified at 44 C.F.R. pt. 206).

Section § 206.206 has now implemented the interpretation Defendants urge the Court to apply to the 2009 version of the regulation. These changes underscore Atlanta's arguments. The current regulation says:

---

[53]  *Id.* ¶¶ 111–118.

[54]  *See, e.g., id.* ¶¶ 122–126.

[55]  Policies adopted pursuant to the notice-and-comment process apply only to declared "major disasters" occurring after the adoption date of the policy. 42 U.S.C. § 5165c(a).

[56]  ECF 24-1, at 7.

[57]  ECF 32, at 9–11.

> The applicant may make a first appeal through the recipient [*i.e.*, the State Grantee] within 60 calendar days from the date of the FEMA determination that is the subject of the appeal and the recipient must electronically forward to the Regional Administrator the applicant's first appeal with a recommendation within 120 calendar days from the date of the FEMA determination that is the subject of the appeal. ***If the applicant or the recipient do not meet their respective 60–calendar day and 120–calendar day deadlines, FEMA will deny the appeal.***

44 C.F.R. § 206.206(b)(1)(ii)(A) (2022) (emphasis added). Whether FEMA had the authority under § 5189a to adopt the 2022 regulation is not at issue here. But the very addition of the highlighted language—explicitly making an appeal untimely if the State Grantee does not comply with its deadline—through the notice-and-comment process, bolsters Atlanta's position that the June 2016 change in policy also should have followed that process.

Whether Atlanta's allegations about that policy change are true is a factual dispute the Court will not decide in Defendants' favor on a motion to dismiss. *Metro. Gov't of Nashville*, 2024 WL 1337189, at *15 (noting that allegations concerning the adoption of the policy without notice and comment had to be accepted as true at the motion to dismiss stage). And treating the allegations as true (as it must), the Court concludes that Atlanta has sufficiently alleged that FEMA retroactively applied the new policy interpretation to the April 2011 First Appeal and the December 2014 First Appeal in violation of the Stafford Act.

### III.    Conclusion

Defendants' motion to dismiss [ECF 24] is **DENIED**. Defendants shall answer the complaint by April 14, 2025. The parties shall conduct their Rule 26(f) conference by April 28, 2025. The parties shall serve their initial disclosures and submit a Joint Preliminary Report and Discovery Plan by May 14, 2025. Discovery will commence on May 14, 2025.

**SO ORDERED** this 31st day of March, 2025.

_____
Steven D. Grimberg
United States District Judge